## Summers *against* Wallace.

A written interrogatory in language which indicates to the witness the answer which the party propounding it wishes to have, is leading, and an answer to it can not be read in evidence: but the indication must be distinct, otherwise it is error to reject the answer.

It is not a good objection to a deposition taken upon a commission to another state, that it was not marked "filed" in the office upon its return, if it was filed in fact, and brought into court by the officer upon the trial.

A vendor of land released from his covenants as to title is a competent witness for the vendee in an ejectment against a third person for part of the property sold.

ERROR to the common pleas of *Washington* county.

Alexander Summers against Oliver Wallace. Ejectment for a small piece of land with a saw-mill upon it. The original title admitted to have been in James Brownlee, who conveyed the same to Thomas and Alexander Summers, and upon the death of Thomas he devised his interest to Alexander Summers, the plaintiff.

[Summers v. Wallace.]

The defendant alleged that prior to the sale to Summers he had purchased by parol from James Brownlee the site of the saw-mill, had paid the purchase-money, received the possession and built the mill; and gave some evidence to establish these facts.

The plaintiff offered in evidence the deposition of Samuel Lowry, taken upon a commission to Ohio: the defendant objected to the second interrogatory and its answer because the interrogatory was a leading one; it was as follows:

" Question 2. Did you ever hear the defendant state the terms on which he held or was to have the property on which he erected the saw-mill adjoining Taylorstown? If so state fully and particularly whether he said he had purchased the ground and mill seat or was only to hold it till he was paid for his trouble and expense, or what he said about it?"

" Answer. He says that he stopped at the saw-mill when the defendant was building it, and inquired of defendant if he had bought the ground: defendant said he had not; that he was not able to buy a cat: the defendant stated further that Brownlee had given him the privilege of building the saw-mill and of using the water that was not needed for the grist-mill: that he could build it himself without a millwright, and it would not cost him much; and that if it did not do so well he might, maybe, do his own sawing."

The court sustained the objection and overruled that part of the testimony.

To this opinion of the court the plaintiff excepted.

The plaintiff further offered the deposition of James M'Cleary, taken upon a commission to Ohio. The defendant objected to it because it did not appear to have been regularly returned and marked "filed" by the prothonotary. The facts were that it had been returned and had been read in evidence before arbitrators on the trial of the cause, but it had never been marked "filed" by the prothonotary; and it was brought into court by the prothonotary with the other papers on the trial. The court rejected it and sealed another bill of exceptions.

The plaintiff further offered James Brownlee, from whom he purchased the property, as a witness. The agreement between Brownlee and the plaintiff for the sale of the property contained this clause: "If Brownlee does not give possession of the saw-mill the 1st of April next, Summers is to keep back 200 dollars until they get possession of it." The defendant objected to the competency of the witness, whereupon the following release was executed by Summers:

" Know all men by these presents, that Alexander Summers, for and in consideration of the sum of one dollar to him in hand paid, the receipt of which he doth hereby acknowledge, hath remised, released and forever quit-claimed, and by these presents doth hereby release, remise and forever quit-claim James Brownlee, Esq., from all liability for and on account of his not delivering to him the pos-

[Summers v. Wallace.]

session of the saw-mill sold to the said Alexander and Thomas Summers by articles of agreement dated the 1st day of May 1834, and doth waive all claim to any benefit which might be derived from the following clause in the said article, viz. 'If Brownlee does not give possession of the saw-mill on the 1st of April 1835, Summers are to keep back two hundred dollars until they get possession of it.' He doth hereby further release the said Brownlee from all liability for and on account of the covenant of warranty contained in the deed made by the said Brownlee to the said Thomas and Alexander Summers dated the 13th of June 1834, so far as regards the saw-mill in the possession of Oliver Wallace.

"The within named Alexander Summers doth further hereby waive all objection to the payment of the balance of purchase-money, under the article of agreement within referred to, for and on account of any defect in the title of the saw-mill. In testimony whereof I have hereunto set my hand and seal this 8th day of November 1837."

Each of the bills of exception was the subject of an assignment of error.

*M'Kennan & Leet*, for plaintiff in error, that the interrogatory was not leading, cited 6 *Binn.* 490; 3 *Binn.* 131.

*Baird*, for defendant in error.

The opinion of the court was delivered by

KENNEDY, J.—The first error assigned, is an exception to the opinion of the court, overruling the reading in evidence to the jury, the second interrogatory, and the answer thereto of Samuel Lowry, a witness on behalf of the plaintiff, residing in the State of Ohio, whose evidence had been taken in the cause, under a commission taken out for that purpose. The interrogatory is in the following words: "Did you ever hear the defendant state the terms on which he held, or was to have the property, on which he erected the saw-mill adjoining Taylorstown? If so, state fully and particularly, whether he said he had purchased the ground and mill-site, or was only to hold it till he was paid for his trouble and expense, or what he said about it." The counsel for the defendant, alleged that it was leading, and upon that ground objected to it, and the answer thereto being read in evidence; and the court being of the same opinion sustained the objection. In order to determine whether the court below decided correctly, it becomes necessary to ascertain the character of a leading interrogatory, and what have been deemed such. Willis, in his Digest of the Rules and Practice as to Interrogatories for the Examination of Witnesses, p. 7, says the following are accounted leading: "Did you not do or see such or such a thing? Did you not see this? Did you not hear that?" &c. And he adds, from 14 *Vin. Abr.* tit. Interr. (B) pl. 6, and note

thereto, " so are all such as are too particular, or seem to point to
one side of the question more than the other." He refers, in the
margin, to *Curs. Can.* 242; *Pr. Reg.* (ed. Wyat.) 258; *Harr. Pr.*
(ed. Nowl.) 259; *Hind's Pr.* 317; 1 *Eq. Ca. Abr.* 232, (ed. 1727,)
and *General Orders in Chan.* by *Beames*, 272, note; *Viner's Abr.*
tit. Interr. From the authorities relating to this point, and the
reason why leading interrogatories and the answers thereto are
suppressed, and not permitted to be read in evidence, the following
rule on the subject, I take it, may fairly be deduced; That where-
ever the interrogatory is couched in such terms as to indicate dis-
tinctly to the witness the answer, that the party propounding it,
wishes him to give, it will be held leading. The examples given
by Mr. Willis, which have been accounted leading, are clearly of
this description. The clause, in the interrogatory in question, to
which exception is taken as being leading, is, " or was only to hold
it till he was paid for his trouble and expense." If this clause had
been " or did he not say that he was only to hold it till," &c., I
should, without doubt, have considered it leading; but drawn as it
is, and taken in connection with the context, and especially the
sequel, I can not think it leading, or so indicating distinctly to the
witness, the answer which the plaintiff wished him to give. The
court, therefore, erred in rejecting the interrogatory and answer to it.

The second error is also an exception to the decision of the court,
in rejecting the testimony of James M'Cleary, another witness for
the plaintiff, residing in the State of Ohio, which had been regu-
larly taken under a commission issued according to an order of the
court for that purpose. The objection to this testimony being read
to the jury was, that though returned into the office of the protho-
notary, and found there at the time of the trial, it was not en-
dorsed " filed" by the prothonotary, nor any entry made by him, of
its having been filed in his office, according to an existing rule of
the court, as it was alleged, requiring this to be done. The exist-
ence of such a rule was denied by the plaintiff's counsel, and from
the rules of the court, as produced, it would rather appear, that no
such rule existed prior to the trial of the cause, though one to that
effect has been made since. But independent of this, what is the
object of such a rule? Is it not to show that the commission has
been returned and filed in the office of the prothonotary. But
when the prothonotary produces the commission on the trial of the
cause from the files of his office, though it does not bear his mark
of having been filed, and he has made no entry of the kind, is not
the fact of its being found by him on the files of his office, as con-
clusive of its having been returned and filed there as if he had
marked it so, or made an entry in his docket to that effect? Be-
sides, in such case, the want of such endorsement or entry might
fairly be presumed to have arisen from the omission of the protho-
notary himself, unless something were shown to rebut it; and would
be unreasonable to deprive the party of the benefit of his evidence,

[Summers v. Wallace.]

for such an omission of the clerk; and particularly in such a case as the present, where the adverse party was not only fully apprised, long before the trial of the cause in court, of the fact of the commission having been executed, returned, and filed, but of the contents of the testimony of the witness, so that he had ample time and opportunity offered him to meet and disprove it if he could. We, therefore, think that the testimony ought to have been admitted, and that the court erred in rejecting it.

The third error is an exception to the decision of the court, rejecting James Brownlee, offered as a witness on the part of the plaintiff, upon an objection made to his competency by the defendant, on the ground that he was interested in the result of the trial. We are unable to perceive that James Brownlee will either gain or lose by the event of this suit, let it be decided either for or against the plaintiff. Though the plaintiff derives his claim to the land from him, yet the release which the plaintiff has given, protects him from all claim or liability to the plaintiff, even if he should lose the land. As to the 200 dollars, part of the consideration of the purchase-money of the whole tract, which was, by the terms of the agreement for the purchase, not to be paid unless the plaintiff should get the land in dispute, the plaintiff again by a deed on his part, has waived this objection to the payment of the 200 dollars: and, consequently, is liable and bound to pay these 200 dollars, whether he succeeds in recovering the land or not. Brownlee, therefore, if he had not assigned, and thus parted with his right to these 200 dollars, would, at most, be nothing more than a creditor of the plaintiff, whose means for paying Brownlee, might be increased by a recovery of the land; but this is too remote an interest to affect the competency of the latter as a witness in the cause. We, therefore, think that Brownlee was a competent witness, and ought to have been admitted to testify.

The fourth error, which is the last, does not appear to us to contain any thing which would warrant a reversal of the judgment.

Judgment reversed, and a *venire facias de novo* awarded.